**This order is SIGNED.**

**Dated: April 22, 2021**




**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**OFFER SPACE, LLC**<br><br>Debtor. | Bankruptcy Case Number: 20-27480<br><br>Chapter 11<br><br>Hon. William T. Thurman |

**MEMORANDUM DECISION ADDRESSING THE U.S. TRUSTEE'S OBJECTION TO DEBTOR'S ELECTION TO PROCEED UNDER SUBCHAPTER V OF THE BANKRUPTCY CODE**

This matter is before the Court by way of the U.S. Trustee's Objection to Debtor's Election to Proceed Under Subchapter V. The Court conducted a preliminary hearing telephonically on April 1, 2021. At the April 1 hearing, the Court accepted and adopted the Stipulated Facts that the parties submitted on March 30. *See* Stipulated Facts for the U.S. Trustee's Objection to Debtor's Election to Proceed Under Subchapter V ("Stipulated Facts"), ECF No. 43. In addition, the Court scheduled a final hearing.

The Court held the final hearing telephonically on the U.S. Trustee's objection on April 16, 2021. Melinda Willden appeared on behalf of the U.S. Trustee and Mark Rose appeared on behalf of Offer Space, LLC (the "Debtor"). Ray Strong, the Subchapter V Trustee, also

appeared.  The Court took the matter under advisement.  The court carefully considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the U.S. Trustee's objection. Now being fully advised, the court issues the following Memorandum Decision.

## BACKGROUND

The Debtor is a limited liability company that was formed in the State of Utah in 2015.[1] After formation, the Debtor provided vendor marketing solutions to direct marketers, including customer relations management, merchant account management, and marketing campaign management using certain proprietary software.

In late 2019 and early 2020, the Debtor's business began suffering difficulties due to legal claims and chargebacks.  As a result, in August 2020, the Debtor began informing its vendors that it would be unable to continue providing them its services.  One of the Debtor's vendors, Ecommerce Tech, LLC ("Ecommerce Tech") offered to purchase the Debtor's proprietary software.  Thus, in August 2020, the Debtor sold its software to Ecommerce Tech for $1,000,000, paid in the form of 6,290,170 publicly tradable shares of Thoughtful Brands, Inc. (the "Stock")—a corporation organized under Canadian law.  The Debtor's software was the main operational asset of its business.

Over the next several months, the Debtor marshaled its assets and took reasonable measures to conduct its business, pay its creditors, and generate revenue.  Then, on December 30, 2020, the Debtor filed for chapter 11 bankruptcy relief (the "Petition Date").  Specifically, the Debtor elected to proceed under Subchapter V of Chapter 11.  On the Petition Date, (1) the Debtor's assets consisted of a bank account, accounts receivable, claims in a lawsuit against a

---

[1] The Court draws each of the background facts herein from the parties' Stipulated Facts.  *See* Stipulated Facts, ECF No. 43.

third-party entity called Nutra Now, Inc. ("Nutra Now"), and the Stock; (2) the Debtor had no employees, was no longer conducting business in the manner previously described, and had no intention to reorganize its business; and (3) the Debtor was using reasonable efforts to pay its creditors and realize value for its assets.

The Debtor filed its Schedules and Statement of Financial Affairs (collectively, "Schedules") on January 13, 2021. The Schedules list the Debtor's total liabilities at $3,470,089.57. The Schedules also list the Debtor's assets, with an estimated value of $392,625.25. That amount, however, excludes possible preference claims.

The meeting of creditors was held on February 5, 2021. The Debtor's principal, Chris Armstrong, attended and testified that the Debtor intended to liquidate the Stock to pay creditors. Mr. Armstrong also explained that the Debtor had no intention to resume business in the manner previously described. The meeting of creditors was then continued to February 19, 2021, to allow the Debtor to obtain new counsel, and the U.S. Trustee concluded the meeting on that date. Then, on February 26, 2021, the U.S. Trustee formally objected to the Debtor's election to proceed under Subchapter V.

## JURISDICTION, VENUE, & NOTICE

The Court's jurisdiction is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), and the Court may enter a final order. The Court finds that venue is proper under the provisions of 28 U.S.C. § 1408. In addition, the Court finds that notice for the hearings for this matter was proper in all respects.

## DISCUSSION

In 2019, Congress passed the Small Business Reorganization Act of 2019 ("SBRA"). Pub. L. No. 116-54, § 5, 133 Stat. 1079 (2019). A key feature of SBRA was the addition of a

new subchapter—Subchapter V—which created a new avenue of chapter 11 relief for small business debtors. *See id.* Shortly after SBRA took effect, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Pub. L. No. 116-136, 134 Stat. 281, 310-12 (2020). The CARES Act expanded Subchapter V eligibility by increasing the debt limit from $2,000,000 to $7,500,000.[2] 11 U.S.C. § 1182(1)(A). Subchapter V now defines a "debtor" as: "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 . . . not less than 50 percent of which arose from the commercial or business activities of the debtor."[3] *Id.*

Pursuant to Federal Bankruptcy Rule 1020(b), the U.S. Trustee may object to a debtor's election to proceed under Subchapter V, and it has done so here. Because the U.S. Trustee has raised such an objection in this case, the Debtor now bears the burden of proving its eligibility under Subchapter V. *In re Sullivan*, No. BR 20-11876 EEB, 2021 WL 1250805, at *2 (Bankr. D. Colo. Mar. 30, 2021); *cf. In re Woods*, 743 F.3d 689, 705 (10th Cir. 2014) (placing the burden of establishing Chapter 12 eligibility on the debtor); *In re Hamilton Creek Metro. Dist.*, 143 F.3d 1381, 1384–85 (10th Cir. 1998) (placing the burden of establishing Chapter 9 eligibility on the debtor).

---

[2] Prior to the enactment of the CARES Act, Subchapter V defined the term "debtor" to mean a "small business debtor," and 11 U.S.C. § 101(51D) defined a "small business debtor" using the exact same definition that Subchapter V currently uses, save the lower, $2,000,000 debt limit. *See* 11 U.S.C. § 101(51D). As will be explained below, however, the debt limit in this case is not in dispute. Accordingly, the distinction between Sections 1182 and 101 is immaterial for purposes of ruling on the U.S. Trustee's objection, and the Court's analysis is equally applicable to both statutes.

[3] While the $7,500,000 debt limit was originally set to sunset in March 2021, Congress recently passed the COVID-19 Bankruptcy Relief Extension Act of 2021, which caused the higher debt limit to be extended to March 2022. Pub. L. No. 117-5, § 2, 135 Stat. 249 (2021).

4

A. **Subchapter V Eligibility**

Based on the statute's definition of "debtor," Subchapter V eligibility depends on four requirements: (1) the debtor must meet the definition of a "person"; (2) the debtor must be "engaged in commercial or business activities"; (3) the debtor cannot have aggregate debt exceeding $7,500,000 as of the date of petition; and (4) at least 50 percent of the debtor's debts arose from its commercial or business activities. 11 U.S.C. § 1182(1)(A). In this case, the parties do not dispute that the Debtor meets the first, third, and fourth requirements. As to the first, because the Bankruptcy Code defines the term "person" to "include[] individual[s], partnership[s], and corporation[s]," the Debtor satisfies the "person" requirement. *Id.* § 101(41). Regarding the second, as mentioned above, the Debtor has $3,470,089.57 in total liabilities, and, as such, falls well below Subchapter V's $7,500,000 debt limit. And as to the third, based on a review of the Schedules, it is clear that more than 50 percent of the Debtor's debts arose from the Debtor's commercial or business activities prior to the Petition Date. *See* Schedules, ECF No. 7.

The U.S. Trustee does, however, object to the Debtor's eligibility based on the second requirement—that a debtor must be "engaged in commercial or business activities." The U.S. Trustee contends that the Debtor is ineligible under the second requirement because the Debtor was no longer an operational business on the Petition Date. To support this assertion, the U.S. Trustee argues that, as of the Petition Date, the Debtor had no employees, was no longer conducting business in the manner it previously conducted business, had no intention to reorganize its business, and intended to merely liquidate the Stock and any remaining assets. In short, the U.S. Trustee asserts that a debtor must be an operating business to satisfy the "engaged in commercial or business activities" requirement. Because the Debtor admits that it had ceased

business operations before the Petition Date, the U.S. Trustee takes the position that the Debtor is ineligible to proceed under Subchapter V.

In response, the Debtor contends that the U.S. Trustee's view of "engaged in commercial or business activities" is far too narrow. The Debtor asserts that the U.S. Trustee's position conflates the term "activities" with the term "operations." The Debtor emphasizes that the two terms are not interchangeable, with the former delineating a much broader array of conduct than the latter. The Debtor therefore claims that, while its business was no longer operational as of the Petition Date, that does not preclude it from proceeding under Subchapter V given that it was still engaged in commercial and/or business *activities*.

Before proceeding and addressing the merits of the U.S. Trustee's objection, the Court notes that this is an issue of first impression for this District. The Court appreciates the briefing and argument of both parties and applauds their work in bringing this matter before the Court. The Court respects both parties and their positions taken. The court also notes that there are decisions on this issue from other jurisdictions which the Court respects.

In order to resolve the U.S. Trustee's objection, the Court must interpret the phrase "engaged in commercial or business activities" as set forth in Subchapter V. A court's "primary task in construing statutes is to determine congressional intent, using traditional tools of statutory interpretation." *In re Taylor*, 737 F.3d 670, 678 (10th Cir. 2013) (quoting *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001)). When it comes to the Bankruptcy Code, "[i]nterpretation . . . starts 'where all such inquiries must begin: with the language of the statute itself.'" *Woods*, 743 F.3d at 694 (alteration in original) (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011)).

In analyzing the language of the Bankruptcy Code, the Court must "consider[] its plain language in the context of the overall Code." *In re Morreale*, 959 F.3d 1002, 1007 (10th Cir. 2020). If the Code does not specifically define a word, that term is given its "ordinary, contemporary, common meaning." *Id.* Nevertheless, the "Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Woods*, 743 F.3d at 694.

Importantly, "where . . . the words of the statute are unambiguous, the judicial inquiry is complete." *Taylor*, 737 F.3d at 678. Thus, when "the statutory language is clear. . . , it is not necessary to refer to the legislative history to interpret its meaning." *In re Roberts*, 906 F.2d 1440, 1445 (10th Cir. 1990).

In this case, the Bankruptcy Code does not specifically define any of the terms within the phrase "engaged in commercial or business activities." As such, the Court will give each term its ordinary, common meaning and analyze each word. Merriam-Webster Online Dictionary defines the term "engaged" as "involved in activity: occupied, busy." *Engaged*, Merriam, https://www.merriam-webster.com/dictionary/engaged (last visited April 15, 2021) (hereinafter, "Merriam-Webster"). The term "commercial" is defined as "occupied with or engaged in commerce or work intended for commerce" and "of or relating to commerce," *Commercial*, Merriam-Webster, and "commerce" is defined as "the exchange or buying and selling of commodities on a large scale involving transportation from place to place," *Commerce*, Merriam-Webster. "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of an economic nature." *Business*, Merriam-Webster. And lastly, the term "activity" is defined as "the quality or state of being active: behavior or actions of a particular kind." *Activity*, Merriam-Webster.

7

Preliminarily, the U.S. Trustee claims that the term "engaged" indicates that a debtor is currently—as opposed to formerly—taking part in an activity. The Court agrees. As aptly and recently explained by another court:

> The plain meaning of "engaged in" means to be actively and currently involved. In § 1182(1)(A) of the Bankruptcy Code, "engaged in" is written not in the past or future but in the present tense. To add the word "currently" to the phrase "engaged in" would be redundant, because the currency of the involvement or activeness is inherent in the idea of being "engaged in" something.

*In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020); *see In re Ikalowych*, No. BR 20-17547 TBM, 2021 WL 1433241, at *12 (Bankr. D. Colo. Apr. 15, 2021) ("[T]he 'engaged in' phrase is used throughout the Bankruptcy Code, and it always means the same thing: that a person or entity is presently doing something."); *In re Johnson*, No. 19-42063-ELM, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021) (finding that the "'engaged in' inquiry is inherently contemporary in focus instead of retrospective, requiring the assessment of the debtor's current state of affairs as of the filing of the bankruptcy petition"). While at least one court has noted that "the statute neither qualifies 'engaged in' as currently nor formerly 'engaged in,'" *In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020), the Court believes that such a reading contravenes the plain meaning of "engaged" as it is used in Subchapter V. The Court therefore concludes that, to be eligible for Subchapter V, a debtor must be presently "engaged in commercial or business activities" on the date of filing the petition for relief.

Having concluded that a debtor must currently be "engaged in commercial or business activities," the Court must next determine whether the Debtor has satisfied that standard. In doing so, the Court will employ a "totality of the circumstances" approach. *Ikalowych*, 2021 WL 1433241, at *14 (citing *Land Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1528 (11th Cir.

1990)). Bearing in mind the above definitions, the Court concludes that the Debtor has met the standard for being "engaged in commercial or business activities" for the reasons outlined below.

As of the Petition Date, the Debtor was actively engaged in commercial or business activities by (1) having active bank accounts; (2) having accounts receivable; (3) analyzing and exploring counterclaims in a lawsuit involving Nutra Now; (4) managing the Stock; and (5) winding down its business and taking reasonable steps to pay its creditors and realize value for its assets. In reaching this conclusion, the Court notes that, unlike the U.S. Trustee's suggestion, the terms "activities" and "operations" are not interchangeable. The Court finds the two terms to be distinct. The term "operation" is defined as "the quality or state of being functional or operative." *Operation*, Merriam-Webster. Thus, had Congress utilized the term "operations" in lieu of "activities" in defining a debtor under Subchapter V, the Court would be constrained to sustain the U.S. Trustee's objection given that the Debtor's business was no longer functional or operational on the Petition Date. That, however, is not what the statute mandates. Rather, the "plain and unambiguous language of [Subchapter V] indicates a small business debtor may engage in a very inclusive range of commercial or business activities. . . . Congress could have chosen different terms or added other exclusions when drafting the SBRA, but instead chose very broad language." *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 619 B.R. 519, 521 (Bankr. M.D. Fla. 2020); *see In re Wright*, CV 20-01035-HB, 2020 WL 2193240, at *3 (Bankr. D.S.C. Apr. 27, 2020) (holding that the debtor was engaged in commercial or business activities by addressing residual business debt); *In re Ventura*, 615 B.R. 1, 22 (Bankr. E.D.N.Y. 2020) (holding that the debtor was engaged in commercial or business activities by operating a bed and breakfast in her home). While the Debtor's business was no longer in operation as it had been previously, the Court believes that, when considering the totality of the circumstances, the

9

Debtor's aforementioned Petition-Date activities adequately demonstrate that it was "engaged in commercial or business activities" on the Petition Date.

A review of other definitions in Section 101 of the Bankruptcy Code provides additional support for this conclusion. For example, Section 101(18)(A) defines a "family farmer" as:

> [An] individual or individual and spouse engaged in a farming *operation* whose aggregate debts do not exceed $10,000,000 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming *operation*), on the date the case is filed, arise out of a farming *operation* owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming *operation* more than 50 percent of such individual's or such individual and spouse's gross income . . . .

11 U.S.C. § 101(18)(A) (emphasis added). While the U.S. Trustee cites that section to support its position that a debtor must be actively engaged, the Court finds that there are notable differences—namely, Congress' use of the term "operation" instead of the term "activities." Had Congress sought to confine the bounds of Subchapter V eligibility, it easily could have used the term "operations" just as it did in Section 101(18). *See also id.* § 101(19A)(A) (defining the term "family fisherman" as "an individual . . . engaged in a commercial fishing *operation*" (emphasis added)). However, Congress elected to use the much more broad and inclusive term "activities." Therefore, as described above, the Debtor's actions on the Petition Date were such that it was "engaged in commercial or business activities."

Notwithstanding the foregoing reasoning, the Court notes that, in the parties' briefing and during oral argument, the Debtor argued that by filing this bankruptcy case and engaging in all that a bankruptcy filing entails, i.e., retaining counsel, preparing filings, participating in proceedings, etc., the Debtor was "engaged in commercial or business activities." The Court, however, is unpersuaded by this argument. Were the Court to conclude otherwise, then any and

10

every debtor that filed for bankruptcy relief and elected to proceed under Subchapter V would automatically satisfy the "engaged in commercial or business activities" requirement. Indeed, such a result would permit debtors to manufacture Subchapter V eligibility by the very act of filing a petition itself.[4] The Court is unpersuaded that the text of SBRA allows such a result. Accordingly, the Court concludes that merely engaging in the bankruptcy process, without more, is insufficient to satisfy the "engaged in commercial or business activities" requirement.

### B. Legislative History

The U.S. Trustee contends that the legislative history of SBRA demonstrates that a debtor must be an operational business in order to proceed under Subchapter V. To support this argument, the U.S. Trustee cites *In re Progressive Sols., Inc.*, 615 B.R. 894 (Bankr. C.D. Cal. 2020). In that case, the court explained that "the whole, the entire whole, of the legislative history and statements of Congress teaches . . . that the primary purpose of the SBRA is to promote successful reorganizations using the tools that are now available under current law." *Id.* at 900. Because the primary purpose of SBRA is to promote reorganizations, the U.S. Trustee avers that debtors seeking to liquidate their shutdown enterprises are ineligible for Subchapter V. The Court, however, is unpersuaded by this argument for three reasons. First, given that the Court has determined the Debtor's eligibility under the plain language of the statute, the Court need not delve into SBRA's legislative history. Second, even if the Court were to consider it, the Court is unpersuaded that SBRA's legislative history evinces that no-longer-operating businesses are ineligible for Subchapter V relief. While successful reorganizations may be the primary purpose behind SBRA, that does not indicate that there are not also secondary or even tertiary purposes for SBRA, i.e., providing relief for small business debtors who intend to liquidate their

---

[4] The Court notes that no manufacturing of eligibility has occurred here given that the Debtor has demonstrated its eligibility based on "commercial or business activities" other than merely filing this bankruptcy case.

11

businesses without the cumbersome structure that otherwise exists in Chapter 11. Third, Chapter 11 allows for debtors to confirm plans that result in liquidation instead of reorganization. *See, e.g.*, 11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, . . . of the debtor or any successor to the debtor under the plan, unless such liquidation . . . is proposed in the plan."); *In re Novinda Corp.*, 585 B.R. 145, 160 (10th Cir. BAP (Colo.) 2018) (affirming the bankruptcy court's finding that the debtor's liquidation plan was feasible). And, notably, while Congress made certain sections of Chapter 11 inapplicable to Subchapter V, Section 1129(a)(11) was not included in those exclusions. *See* 11 U.S.C. § 1181. Therefore, even though the primary purpose of SBRA is to assist small businesses in reorganizing, nothing in the legislative history or the text of the statute precludes a small business debtor, who has gone out of business, from availing itself of Subchapter V and pursuing a liquidation plan.

### C. Relevant Caselaw

A very recent decision from another court in this Circuit provides salient analysis and further corroborates the Court's conclusion. *Ikalowych* involved an individual debtor who owned a pass-through limited liability company, which, in turn, owned 30 percent of the interest in a different limited liability company that operated an automotive repair business. 2021 WL 1433241, at *1. The debtor worked for and managed the second company. *Id.* Eventually, the second company experienced significant financial distress and was forced to cease operations and surrender all of its assets. *Id.* This triggered the debtor's own bankruptcy because he had personally guaranteed most of the second company's debts. *Id.* The cessation of the second company also forced the debtor to obtain new employment selling commercial insurance for a company that he neither owned nor controlled. *Id.* Nevertheless, the debtor performed certain

12

wind-down duties for the second company both pre- and post-petition. *Id.* When the debtor filed for bankruptcy, he elected to proceed under Subchapter V. *Id.* Just as is the case here, the U.S. Trustee objected, arguing that the debtor was not engaged in commercial or business activities. *Id.* at *2. The debtor refuted the U.S. Trustee's objection and asserted his eligibility based on his ownership of the pass-through company, his indirect ownership of the second company, and his wind-down work for the second company. *Id.*

In addressing the parties' arguments, the court concluded that the debtor was engaged in commercial or business activities by (1) his non-passive ownership of the pass-through company; (2) his non-passive, indirect ownership of the shutdown second company, which included steps he took to wind down the business; and (3) being a "wage earner" at and employee of the company for which he sold commercial insurance products. *Id.* at **14–16. The court determined that these activities were sufficient to satisfy the eligibility standard because "'commercial or business activities' is a very broad and encompassing phrase." *Id.* at *10.

*Ikalowych's* analysis and its interpretation of "commercial or business activities" support the Court's conclusion that the Debtor was "engaged in commercial or business activities" given that its activities were well beyond that of an individual merely being a wage earner or employee. Further, the Court agrees with and adopts *Ikalowych's* rationale that a debtor's actions in winding down its business constitute "commercial or business activities." And lastly, *Ikalowych's* holding corroborates the Court's specific finding that a debtor's business need not be operational to be eligible for Subchapter V relief.

The Court, however, notes that two other bankruptcy courts have reached an alternate conclusion—that is, a small business debtor is ineligible for Subchapter V relief if its business is not operational on the filing date. *See Thurmon*, 625 B.R. 417; *Johnson*, 2021 WL 825156.

13

Nevertheless, the Court believes that the facts and circumstances in those cases are distinguishable from those of the present case.

First, *Thurmon* involved a husband and wife as debtors who owned and operated two pharmacies in the State of Missouri. *Thurmon*, 625 B.R. at 420. Prior to filing for bankruptcy, the debtors closed the pharmacies and sold almost all of their business assets. *Id.* Similar to this case, the debtors elected to proceed under Subchapter V, and the U.S. Trustee objected on the grounds that the debtors' business was no longer in operation. *Id.* In response, the debtors argued, among other things, that they were engaged in commercial or business activities because their business, which had operated the pharmacies, was still an entity in good standing with the State of Missouri. *Id.* at 421. In finding in favor of the U.S. Trustee, the court reasoned:

> The [debtors] were not as a matter of fact or law "engaged in commercial or business activities" on the day they filed bankruptcy because they had in fact sold the business with no intent to return to it and were otherwise not active or involved in any commercial or business activities

*Id.* at 423. The court further noted that "keeping the empty shell of the former business entity open with the Missouri Secretary of State's office does not render them 'engaged' in business activities." *Id.*

The Court finds the facts of the present case to be distinguishable from those in *Thurmon*. Unlike the debtors in *Thurmon*, the Debtor here has not been sold nor is it relying on its entity status with the State of Utah for its eligibility under Subchapter V. Furthermore, it appears that the *Thurmon* debtors had completely wound down their business prior to filing for bankruptcy. Yet, as explained above, in this case, the Debtor is currently engaged in several business and/or commercial activities to facilitate its winding down. Therefore, the Court believes that *Thurmon* is distinguishable such that it is not dispositive of the present case.

Second, *Johnson* is equally distinct from the present circumstances. *Johnson* involved a husband and wife as joint debtors. *Johnson*, 2021 WL 825156 at *1. The husband previously owned and operated certain oil and gas companies that had since gone out of business (the "Defunct Companies"). *Id.* at *2. The debtors filed under Chapter 7 but then sought to convert to Chapter 11 and elect Subchapter V in order to avoid the U.S. Trustee's objection to the debtors' discharge. *Id.* In seeking conversion, the debtors first argued that they were eligible for Subchapter V because the husband had previously owned and managed the Defunct Companies. *Id.* at *5. The court, however, was unpersuaded by the debtors' argument, finding that "each of the Defunct Companies had ceased all commercial and business activities prior to the Petition Date and that [the debtor] was not occupied with or otherwise busy in - i.e. 'engaged in' - any commercial or business activities with respect to the Defunct Companies." *Id.* at *7. Alternatively, the debtors argued that they were engaged in commercial or business activities based on the husband's position as the president of the company where he was employed. *Id.* at *8. The court determined that merely being an employee of a company, in which a debtor has no ownership interest, is insufficient to render someone a small business debtor for purposes of Subchapter V. *Id.*

Again, the Court finds *Johnson* to be distinguishable from the present case. First, the last of the Defunct Companies went out of business and ceased all operations in January 2019. *Id.* at *2. The debtors did not seek to convert their case and elect Subchapter V until May 2020—approximately a year and a half from the time that the last of the Defunct Companies was in operation. *Id.* at *3. Thus, by the time the debtors elected Subchapter V, they clearly were no longer engaging in any business or commercial activities related to the Defunct Companies. Conversely, in this case, the Debtor filed for bankruptcy protection within a matter of months

15

after informing vendors of its inability to continue providing services and while it was in the process of marshaling its assets and winding down its business—a process with which it is still engaged today. Second, after their reliance on eligibility through the Defunct Companies failed, the debtors in *Johnson* merely relied on the husband's position as the president of a company. Here, the Debtor's activities are much more involved than merely being the employee of a company. Third, *Johnson* is procedurally distinct given that the debtors there sought Subchapter V protection solely to avoid the U.S. Trustee's objection to their discharge. *Id.* at *1. Accordingly, the Court finds that the present case is sufficiently distinct from *Johnson* and so declines to follow its holding.

Moreover, the Court highlights a notable distinguishing factor that existed in *Thurmon* and *Johnson* but that is not present in the current case—the debtors in both of those cases were individuals, not business entities.[5] While the text of SBRA makes no legal distinction between individuals and business debtors under Subchapter V, the Court believes that the factual distinction between the two is significant in understanding the conclusions reached in *Thurmon* and *Johnson*. In both cases, the debtors filed for relief under Subchapter V in their individual capacities. Thus, when the U.S. Trustee raised its objection to their elections, the debtors were forced to try and tether themselves to their former businesses—businesses which, themselves, were not in bankruptcy. Given that the debtors in *Thurmon* and *Johnson* were a level removed from the businesses themselves, they faced the challenge of bridging the gap between their commercial or business activities and their businesses' commercial or business activities. While

---

[5] The Court notes that each of the prior opinions addressing whether a business need be presently operational to constitute being "engaged in commercial or business activities" under Subchapter V involved individual debtors. *See Ikalowych*, 2021 WL 1433241, at *1; *Johnson*, 2021 WL 825156, at *1; *Thurmon*, 625 B.R. at 420; *Blanchard*, 2020 WL 4032411, at *1; *In re Bonert*, 619 B.R. 248, 251 (Bankr. C.D. Cal. 2020); *Wright*, 2020 WL 2193240, at *1. The Court is unaware of any other opinion—other than this opinion itself—dealing with this particular issue wherein the debtor was a business entity.

16

this may appear to be a distinction without a difference, in light of the courts' rulings in *Thurmon* and *Johnson*, the Court believes that it is an important aspect of the eligibility analysis when considering the totality of the circumstances. And, in this case, because the Debtor *is the business*, it had no gap to bridge regarding its commercial or business activities.

Accordingly, the Court finds that the most recent caselaw on this precise issue supports the Court's conclusion.

## CONCLUSION

Based on the foregoing reasoning, the Court concludes that the Debtor is eligible to proceed under Subchapter V of Chapter 11. Therefore, the U.S. Trustee's Objection to Debtor's Election to Proceed Under Subchapter V should be OVERRULED, and an order will be entered accompanying this Memorandum Decision allowing the Debtor to proceed in accordance with the requirements of Subchapter V.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **MEMORANDUM DECISION ADDRESSING THE U.S. TRUSTEE'S OBJECTION TO DEBTOR'S ELECTION TO PROCEED UNDER SUBCHAPTER V OF THE BANKRUPTCY CODE** shall be served to the parties and in the manner designated below:

By Electronic Service:

- Darwin H. Bingham dbingham@scalleyreading.net, cat@scalleyreading.net
- Gregory S. Moesinger gmoesinger@kmclaw.com, tsanders@kmclaw.com
- David W. Newman tr David.W.Newman@usdoj.gov, Lindsey.Huston@usdoj.gov; James.Gee@usdoj.gov; Rinehart.Peshell@usdoj.gov; Rachelle.D.Armstrong@usdoj.gov; Brittany.Eichorn@usdoj.gov
- Mark C. Rose mrose@mbt-law.com, markcroselegal@gmail.com
- D. Ray Strong tr rstrong@thinkbrg.com, UT30@ecfcbis.com;drstrong@ecf.axosfs.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr melinda.willden@usdoj.gov